## Case No. 14,494.

### UNITED STATES v. BAGWELL.

[20 Int. Rev. Rec. 121.]

District Court, N. D. Georgia. Sept. Term, 1874.

#### ILLICIT DISTILLING—EVIDENCE.

[1. To bring one within the definition of a "distiller" given by Act July 20, 1868,—as one producing distilled spirits,—it is not necessary that the spirits produced be of a particular degree of strength, it being sufficient if they are low wines or singlings.]

[2. The provision of Act July 20, 1868, that every person who, by any process of vaporization, separates alcoholic spirits from any fermented substance, shall be regarded as a distiller, is satisfied if the spirits extracted partake of the qualities of alcohol.]

[3. A part owner of a still is guilty of a violation of the internal revenue law if he knows that the law is being transgressed by his co-owner, or any other person with the still; and it is immaterial that he does not share in the alcoholic spirits produced, or in the profits.]

Criminal information [against Berry Bagwell] for carrying on the business of a distiller without having given bond as required by law. There was a second count for retailing which was abandoned.

Hilliard & Degraffenried, Mr. Branham, and Mr. Culberson, for the motion.

U. S. Atty. Farrow and U. S. Asst. Atty. Thomas, contra.

ERSKINE, District Judge. Some ten days ago the jury found the defendant guilty of carrying on the business of a distiller, as charged in the information. A. new trial was asked for on the following grounds: That the verdict was contrary to evidence. That it was contrary to the weight of evidence. That it was contrary to law. Fourth, "Because the court charged the jury that if they found that John Owens carried on the business of a distiller at the still, without giving bond, and that the defendant owned a half interest in the still, and knew that John Owens was carrying on the business, the defendant was guilty, and they would so find whether the defendant was present participating or not." Fifth, "Because the court charged the jury that if they found that Berry Bagwell owned one-half of the still, and Owens the other half, that the possession of Owens was the possession of the defendant." This objection was finally abandoned. The sixth and last objection was this: "Because defendant and his counsel have been informed since the trial that W. L. Clay, one of the talesmen had not resided in the Northern district of Georgia for six months prior to the trial, and was, therefore, an incompetent juror; and the defendant having objections to said Clay as a juror, was deprived of the privilege of a third strike, for the reason that if he had exercised it, Clay's name being the next on the roll. he would have been placed on the jury for the trial of the defendant, and the defendant desired to strike one other juror from the regular panel, who was also objectionable to him, but whom he preferred to Clay." This objection was supported by an affidavit; it was agreed by counsel on both sides that the issue of residence be submitted to the court. The affidavit of one Seymour was read, and the oral testimony of Clay was given. The court decided that Clay was a resident of this district for six months preceding the trial; counsel then said that they did not desire that any other point in the sixth objection be passed upon. The fourth and fifth exceptions being abridged from a single paragraph on one subject-matter—in the charge, and the fifth being abandoned. the entire paragraph may be properly quoted in full. though the synopsis is as substantially correct, as, within its compass, it could be made: "This is a misdemeanor, and in offences of this grade or kind, the distinction between principals and accessories is not admitted; and all advisors, contrivers and procurers, are principals equally with those who commit the offence, though the advisors, contrivers and procurers are absent at the time of its commission. 2 Bish. Cr. Proc. (2d Ed.) § 2. Therefore, gentlemen, if you are satisfied. from the evidence that the still belonged absolutely to Bagwell. or to him and Owens. as tenants in common, joint tenants. or as partners, the possessions of one would, in law. be deemed the possessions of both. unless the contrary is shown; and if Owens, while such relation lasted, committed the particular act, producing alcoholic spirits with the still, which would, under any part of the statute, cause him to be regarded a distiller, and Bagwell had knowledge of the doing of such act with the still, he would be equally guilty with Owens; and to make him so, it would not be necessary to a conviction to prove that he was present aiding Owens."

Mr. Holtzclaw, the revenue collector, testified that he and Blagster went between 12 and 3 o'clock at night to defendant's house; and (defendant had just been arrested by Cooper and Sheridan) rode with him next day to Rome, he was pretty drunk. "He confessed to me that he owned a half interest in the still, and had built the house, but had nothing to do with the running of the still, or with working there; said the land was not his." Witness added that it was so long ago that his memory was indistinct, but his impressions were that Bagwell's statements were as he had given them. The still was set up, saw no mash, saw some beer, and low wines, called singlings; saw no one at the still. Owens had not given bond; nor had Bagwell.

Mr. Isaac Car had owned the still and sold half interest to the defendant, and the other half to Daniel Bagwell, who sold his interest to Owens. Was at the still twice afterwards; found defendant there. both times; saw him take still slops cut of the house, and put them in a hole to feed his hogs; next time he was sitting down doing nothing; still set up, no cap on; beer there fit for the distillation of corn whiskey; defendant asked witness how he thought the bar was doing? "Men saw him working there, saw no whiskey or liquor; he said he wanted to make some brandy, and a run or two of whiskey, and wanted to hire me to work for him, but I told him that I did not want to have anything to do with it; I might get into trouble. Have been committed for stilling with the same still, and am now under sentence of this court."

Mr. Cooper: When defendant was told the cause of his arrest. he said: "We have not made a run for two weeks, and the last we made was such mean whiskey, we thought if we could not do better we had better quit. Said still was his; land not. Saw some corn meal at the still nearly dry; saw a few gallons of low wines; saw no liquor—no one there; still set up; cap on, worm attached."

Mr. Daniel Bagwell: Owens made a run of the still; turned out a few gallons of stuff which was not liquor; he made a failure, defendant did not work there. and never made any liquor there; saw him drive his hogs down there and feed them with the slops; about a week after the house was built, still was set up; don't know who set it up.

Several witnesses were introduced by the defendant to impeach the general character of Jesse Car; some were under indictment;

some not. The court left this testimony and the opinions of the witness to the jury.

Com. v. Gannett, 1 Allen, 7. Indictment for keeping a house of ill-fame. "It appears," says the reporter, "in evidence, that the defendant owned the house in question, and had lived there for a number of years with his family; and in reference to this the court charged the jury, that although the defendant's daughters nominally kept the house, yet if he actually kept it himself, or if he aided and assisted them in keeping and maintaining it for the purposes specified in the indictment, they might find him guilty." Biglow, C. J., said: "The instructions to the jury were correct. If the defendant aided and assisted them in committing the offence charged in the indictment, he was equally guilty, in the eyes of the law, with those who actually hired and controlled the house." Exceptions overruled. The case of U. S. v. Harbison [Case No. 15,300] was for distilling and retailing contrary to the act of congress. The witness testified that he leased the still and apparatus from the defendant (Harbison), on which he made one run of whiskey, and paid defendant one-seventh part of the whiskey for the use of the still; defendant introduced no evidence. But the counsel contended that only the principal in the transaction could be said to be "carrying on the business of a distiller." Emmons, Circuit Judge, charged the jury that, "if upon this evidence you believe that Harbison did the acts sworn to, they constitute the offence of distilling without a license; it is not necessary that a defendant should carry on the business personally, that he should be responsible for the labor, or interested as owner, or act as chief agent; it is enough that he aids and abets the manufacture, knowing that it is carried on in violation of law; a citizen has no right to aid in breaking the laws of his country, and is bound alike in law and morals to abandon all service for another the moment he has good reason to believe his business is carried on in disregard of them. Should the owner of an illicit distillery be absent from the state, or, being within it, be unknown, if such were not the rule, this statute might, through the instrumentality of agents and laborers, be broken with impunity. It is a necessary doctrine that all who knowingly aid are alike guilty. A thousand may be as much so as one, if they have common knowledge of the illegality. . . If you believe, therefore, that Harbison was a party to an agreement, in pursuance of which a distillery and apparatus, or any part of it, was used in the unlawful manufacture of whiskey, you will find him guilty under the first count." There was also a count for retailing. Defendant was convicted of both offences.

Congress. in section 59 of the act of July 20, 1868 (15 Stat. 150), has defined or described a distiller. It declares that: "(1) Every person who produces distilled spirits shall be regarded as a distiller. (2) Every person who brews or makes mash, wort or mash fit for distillation or for the production of spirits shall be regarded as a distiller. (3) Every person who, by any process or vaporization, separates alcoholic spirits from any fermented substance, shall be regarded as a distiller. (4) Every person who making or keeping mash, wort or mash, has also in his possession or use a still, shall be regarded as a distiller." It is possible that those do not include all the instances in which a party may be regarded as a distiller. It is enacted by section 104, that the word "person" shall include a firm, partnership association, company, or corporation, and that the singular number shall include the plural. To bring a person within the first definition or description, it is not necessary that the distilled spirits produced should be of a particular degree of strength in spirit; as for example, of first, second, third or fourth or high proof; if the extracted spirits be which is known as low wines or singlings, it will be sufficient. And under the third description, the phrase "alcoholic spirits" will be satisfied if the spirit extracted partake of the qualities of alcohol. It is a matter of little moment whether Owens and the defendant were copartners, or how otherwise interested in the still. If they embarked in the illegal adventure; or, if by any artifice, scheme, device, or procurement of the defendant the act of congress was violated, he, equally with the more positive actor, Owens, or with any other participant, would be guilty of the offence charged in the information. So, too, if the defendant knew that the statute was being transgressed by his co-owner or any other person, with the still, and it would make no difference, in the eye of the law, whether the defendant was or was not to, or did or did not, share in the illicit alcoholic spirits, or in the profits.

I am clearly of the opinion that the evidence warranted the verdict of the jury. And I think the charge of the court was correct. Motion for a new trial overruled.